UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHAPTER 11

IN RE:   JAYEL CORPORATION                                                                        DEBTORS-IN-POSSESSION
                                                                                                                      CASE NO. 10-71120

PLAN OF REORGANIZATION
OF
JAYEL CORPORATION

_____

PART I

Summary Classification of Claims & Length of Plan

Four (4) classes of claims are defined in this Plan of Reorganization, enumerated as follows:

**CLASS 1.**        Administrative Expense Claims

**CLASS 2.**        Secured Creditor First National Bank of Fort Smith (referred to in the Schedules as Bank of Rogers/ First National is a successor in interest)

**CLASS 3.**        Claims of Tax Entities

**CLASS 4.**        Allowed General Unsecured Claims

The Effective Date of this Plan shall be the first business day of the first full month after an order confirming the Plan is entered.

The length of the Plan shall be twenty-five (25) years and shall be known as the reorganization period. It is anticipated and proposed in this Plan that all unsecured creditors shall be paid in full under the Plan of Reorganization.

The debtor-in-possession is referred to herein as "Jayel Corporation", Debtor-in-Possession", or "Debtor" and such reference also incorporates the Debtor's successors and assigns.

The dates referred to in this plan are based upon the Gregorian calendar wherein the calendar year commences on the 1st day of January and ends on December 31st. The calendar year is divided into four quarters with the first, second and third months of the first full quarter being January, February and March respectively; with the first, second and third months of the second quarter being April, May and June

respectively; with the first, second and third months of the third quarter being July, August and September respectively; and the first, second and third months of the fourth quarter being October, November and December respectively.

This Plan of Reorganization is generally referred to herein as "Plan."

The Debtor other than as set forth in this Plan of Reorganization authorizes no representations concerning the Debtor, its assets, liabilities and net worth, if any, or prospects for future business operations or value of their property. Any representations or inducements made to secure your acceptance of the Plan that are other than as contained in this document should not be relied upon by you in arriving at your decision.

The information contained herein has not been subject to a certified audit by the Debtors' certified public accountants, except as specifically noted. However, Debtor has made a review of its books, records and accounts maintained and prepared pre-petition. For the foregoing reasons, as well as the complexity of the financial affairs of the Debtor, the Debtor is unable to warrant or to represent unqualifiedly and absolutely that the information contained herein is without any inaccuracy, although great effort has been made to be accurate.

## PART II

### Assignment & Treatment of Classes of Claims

The Debtor proposes the following classification and treatment of claims:

**CLASS 1.**     **ADMINISTRATIVE EXPENSE CLAIMS**
                      **(this is an unimpaired class)**

Each holder of an allowed Administrative Expense Claim shall be paid: (i) the full amount of such Allowed Administrative Expense Claim, in cash, without interest, on the later of (a) the Effective date or as soon thereafter as is practicable, or (b) the date on which such Allowed Administrative Expense Claim becomes due and payable pursuant to the terms thereof, the agreement upon which such Allowed Administrative Expense Claim is based, or any applicable Final Order; or (ii) in such amount, or on such other date and upon such other terms as may be contained in a Final Order or as agreed upon between the holder of such allowed Administrative Expense Claim and the Debtor. Post-petition expenses incurred in the ordinary course of business are current and shall continue to be paid, post confirmation, pursuant to their credit terms. The Debtor estimates allowed Administrative Expense Claims, net of retainers, at $15,000.00. Post-petition taxes will be treated according to 503 (b) (1) (B).

**CLASS 2.**     **SECURED CLAIM OF FIRST NATIONAL BANK OF FORT SMITH**
                      **(this is an impaired class)**

The Debtor has six notes with First National Bank of Fort Smith with most of the notes being secured by multiple properties. The Debtor seeks the flexibility to maintain and manage the existing properties along with the ability to sell properties as needed to finance the plan and future transactions. The treatment on

each note will be the same; however, for clarity, they are identified individually in this section.

    A)    Note #2179 - The original note amount was $200,044.50. As of the filing date of the Debtor's bankruptcy, there was a balance owing of $192,655.95 which includes pre-petition accrued interest. As of the filing date, the prime rate as reported by the Wall Street Journal is 3.25%. During the first year of the confirmed plan, the bank would receive interest only payments of $602.00 per month. On the anniversary date of the confirmed plan, the Debtor would begin making principal and interest payments of $1,016.00 per month which is based upon a 3.75% interest rate over a 24 year amortization. Every three years beginning from the confirmation date, the bank may adjust the interest rate and correlating payment amount to 1% (one point) above the then existing prime rate over whatever time is remaining from the original 24 year amortization.

The Debtor seeks from First National Bank of Fort Smith what the bank believes to be the fair market value of each piece of secured property under this note. If said valuation is lower than the amount owed, the Debtor proposes to pay the bank the value of the property instead of the amount owed. In the event of a future sale of any secured property under this note , the Debtor proposes to pay the bank the lesser of the amount owed or the fair market value of said property as represented by the bank. Any excess proceeds from said sale will be used by the Debtor in the operation of the Debtor's business.

    B)    Note 2607812 - The original note amount was $5,941,567.20. As of the filing date of the Debtor's bankruptcy, there was a balance owing of $5,995,280.76 which includes pre-petition accrued interest. As of the filing date, the prime rate as reported by the Wall Street Journal is 3.25%. During the first year of the confirmed plan, the bank would receive interest only payments of $18,738.00 per month. On the anniversary date of the confirmed plan, the Debtor would begin making principal and interest payments of $31,606.00 per month which is based upon the 3.75% interest rate over a 24 year amortization. Every three years beginning from the confirmation date, the bank may adjust the interest rate and correlating payment amount to 1% (one point) above the then existing prime rate over whatever time is remaining from the original 24 year amortization.

The Debtor seeks from First National Bank of Fort Smith what the bank believes to be the fair market value of each piece of secured property under this note. If said valuation is lower than the amount owed, the Debtor proposes to pay the bank the value of the property instead of the amount owed. In the event of a future sale of any secured property under this note , the Debtor proposes to pay the bank the lesser of the amount owed or the fair market value of said property as represented by the bank. Any excess proceeds from said sale will be used by the Debtor in the operation of the Debtor's business.

    C)    Note 11307 - The original note amount was $1,950,000.00. As of the filing date of the Debtor's bankruptcy, there was a balance owing of $1,871,557.79 which includes pre-petition accrued interest. As of the filing date, the prime rate as reported by the Wall Street Journal is 3.25%. During the first year of the confirmed plan, the bank would receive interest only payments of $5,849.00 per month. On the anniversary date of the confirmed plan, the Debtor would begin making principal and interest payments of $9,865.10 per month which is based

upon the 3.75% interest rate over a 24 year amortization. Every three years beginning from the confirmation date, the bank may adjust the interest rate and correlating payment amount to 1% (one point) above the then existing prime rate over whatever time is remaining from the original 24 year amortization.

The Debtor seeks from First National Bank of Fort Smith what the bank believes to be the fair market value of each piece of secured property under this note. If said valuation is lower than the amount owed, the Debtor proposes to pay the bank the value of the property instead of the amount owed. In the event of a future sale of any secured property under this note , the Debtor proposes to pay the bank the lesser of the amount owed or the fair market value of said property as represented by the bank. Any excess proceeds from said sale will be used by the Debtor in the operation of the Debtor's business.

D) Note 2607992 - The original note amount was $149,436.76. As of the filing date of the Debtor's bankruptcy, there was a balance owing of $155,068.26 which includes pre-petition accrued interest. As of the filing date, the prime rate as reported by the Wall Street Journal is 3.25%. During the first year of the confirmed plan, the bank would receive interest only payments of $485.00 per month. On the anniversary date of the confirmed plan, the Debtor would begin making principal and interest payments of $818.00 per month which is based upon the 3.75% interest rate over a 24 year amortization. Every three years beginning from the confirmation date, the bank may adjust the interest rate and correlating payment amount to 1% (one point) above the then existing prime rate over whatever time is remaining from the original 24 year amortization.

The Debtor seeks from First National Bank of Fort Smith what the bank believes to be the fair market value of each piece of secured property under this note. If said valuation is lower than the amount owed, the Debtor proposes to pay the bank the value of the property instead of the amount owed. In the event of a future sale of any secured property under this note , the Debtor proposes to pay the bank the lesser of the amount owed or the fair market value of said property as represented by the bank. Any excess proceeds from said sale will be used by the Debtor in the operation of the Debtor's business.

E) Note 2607994 - The original note amount was $215,783.07. As of the filing date of the Debtor's bankruptcy, there was a balance owing of $223,914.83 which includes pre-petition accrued interest. As of the filing date, the prime rate as reported by the Wall Street Journal is 3.25%. During the first year of the confirmed plan, the bank would receive interest only payments of $700.00 per month. On the anniversary date of the confirmed plan, the Debtor would begin making principal and interest payments of $1,180.27 per month which is based upon the 3.75% interest rate over a 24 year amortization. Every three years beginning from the confirmation date, the bank may adjust the interest rate and correlating payment amount to 1% (one point) above the then existing prime rate over whatever time is remaining from the original 24 year amortization.

The Debtor seeks from First National Bank of Fort Smith what the bank believes to be the fair market value of each piece of secured property under this note. If said valuation is lower than the amount owed, the Debtor proposes to pay the bank the value of the property instead of the

amount owed. In the event of a future sale of any secured property under this note, the Debtor proposes to pay the bank the lesser of the amount owed or the fair market value of said property as represented by the bank. Any excess proceeds from said sale will be used by the Debtor in the operation of the Debtor's business.

F)  Note 15222 - The original note amount was $1,325,000.00. As of the filing date of the Debtor's bankruptcy, there was a balance owing of $1,317,944.72 which includes pre-petition accrued interest. As of the filing date, the prime rate as reported by the Wall Street Journal is 3.25%. During the first year of the confirmed plan, the bank would receive interest only payments of $4,119.00 per month. On the anniversary date of the confirmed plan, the Debtor would begin making principal and interest payments of $6,946.97 per month which is based upon the 3.75% interest rate over a 24 year amortization. Every three years beginning from the confirmation date, the bank may adjust the interest rate and correlating payment amount to 1% (one point) above the then existing prime rate over whatever time is remaining from the original 24 year amortization.

The Debtor seeks from First National Bank of Fort Smith what the bank believes to be the fair market value of each piece of secured property under this note. If said valuation is lower than the amount owed, the Debtor proposes to pay the bank the value of the property instead of the amount owed. In the event of a future sale of any secured property under this note, the Debtor proposes to pay the bank the lesser of the amount owed or the fair market value of said property as represented by the bank. Any excess proceeds from said sale will be used by the Debtor in the operation of the Debtor's business.

The terms of any liens and security agreements given by the debtor to First National Bank of Fort Smith to secure payment are hereby incorporated by reference into this Plan except as specifically provided for in this Plan and as varied by this Plan. The terms of the promissory note, mortgages, liens, and security agreements with regard to attorney's fees and costs are incorporated by reference into this Plan.

### CLASS 3. CLAIMS OF TAXING ENTITIES
**(this is an unimpaired class)**

All governmental entities including without limitation entities on the local, state and national level shall be paid when the obligations become due. The Debtor shall maintain proper records and accounting and shall file all necessary reports on a timely basis. If allowed by the respective entity and for good cause, the Debtor may seek various extensions, if needed, to comply with its obligations herein.

If the United States or the State of Arkansas finds the debtor or the successors-in-interest to be in default of the debtors' obligation under the plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the debtors or to the successors-in-interest.

If full payment of the plan obligation is not made within 21 days of such demand, then the IRS or Arkansas Department of Finance may collect any unpaid liabilities through the administrative collection provisions of the IRS.

Debtor believes that at the time of filing Debtor is current on all Arkansas Department of Finance and IRS tax obligations.

If the Debtor fails to make any payment of any tax to the IRS or Arkansas Department of Finance within 10 days of the due date of such payment, or if the debtor fails to file any required federal or state tax return by the date of such return, then the United States may declare that the debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States or the State of Arkansas of the right to declare that the debtor is in default.

If the United States declares the debtor to be in default of his obligations under the Plan, then the entire amount still due under the Plan, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the debtor.

If full payment is not made within 14 days of such demand, then the IRS may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code, including, but not limited to, the filing of a Notice of Federal Tax Lien and the powers of levy, seizure, and sale.

Notwithstanding anything in the confirmed plan, or any modification thereto, the Bankruptcy Court shall not retain jurisdiction with respect to secured, priority or administrative expenses tax claims except for (1) resolving the amount of such claims, or (2) enforcing the discharge provisions of the confirmed plan.

The Reorganized Debtor shall submit all Plan Payments for administrative expenses, secured, priority, and general unsecured tax claims and all post-confirmation tax reports and payments due the ADF&A to the following address: Arkansas DF&A, Bankruptcy Section, P.O. Box 1272, Room 2380, Little Rock, Arkansas 72203.

The Debtor owes pre-petition Benton County Property Taxes in an estimated amount of $30,000. This debt obligation shall be paid in full within the first 5 years after plan confirmation in equal monthly installments beginning the first full calendar month following plan confirmation. All post petition property taxes shall be paid as they become due.

**CLASS 4.    ALLOWED GENERAL UNSECURED CLAIMS
(this is an unimpaired class)**

The Debtor believes that he has only one unsecured creditor. Said unsecured creditor is owed approximately $4,000.00. This creditor along with any unlisted and unknown unsecured creditor, should one arise, will be paid 90% of its claim at 0% (Zero Percent). Each valid and allowed unsecured claim shall be paid 1/4 of its balance due on each anniversary date of plan confirmation. For example, if the Debtor's plan is confirmed on August 15, 2010, the creditor would receive 1/4 of its valid and allowed claim on August 15, 2011, 1/4 of its valid and allowed claim on August 15, 2012 etc. until the claim is paid in full.

**PART III**

**Classes of Claims Impaired by the Plan**

Class 2 and Class 4 are impaired by this Plan.

## PART IV

### Treatment of Pre-Petition Tax Claims of Governmental Authorities

The Debtor believes that it is current with its corporate tax returns; however, any deficiencies shall be cured as follows: (1) deficiencies which are unsecured shall be paid as a general unsecured creditor as scheduled above; (2) any priority claim shall be paid as designated as a taxing entity as scheduled above.

## PART V

### Treatment of Unimpaired Claims

All classes in this Plan which are unimpaired shall be treated as outlined in Part II above.

## PART VI

### Treatment of Impaired Claims

The classes of impaired claims shall be treated pursuant to the provisions of this Plan and as outlined in Part II above.

## PART VII

### Assumption or Rejection of Executory Contracts and Unexpired Leases

The Debtor has no leases or executory contracts to assume or reject. The Debtor will continue to honor and receive the benefit of its leases with its tenants as part of its day to day operations.

## PART VIII

### Timing of Distributions

Payments and distributions in respect of Allowed Claims under the Plan shall be made as mandated under the Plan. On the Effective date, the Debtor will (i) surrender to Secured Creditors any property determined to be unnecessary for reorganization, (ii) pay in full, all allowed Administrative Expense Claims. Distributions to allowed General Unsecured Claims will be made as designated in Part II above and once (i) all disputed claims in each respective class become either allowed claims or (ii) are disallowed by final order.

## PART IX

### Unclaimed Funds and Returned Distributions

Any distribution to the holder of an allowed General Unsecured Claim that is unclaimed shall revert after 45 days from the date of distribution to the Debtor. A distribution of funds is unclaimed if, without limitation, the holder of a claim entitled thereto does not cash a check or return a check or if the check mailed to a holder at the address set forth in the Debtor's schedules or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.

Unless the holder of a claim advises the Debtor or its attorney in writing of a change of address, all distributions or notices shall be sent to the holder at his address as stated in the Debtor's schedules as stated in a properly filed proof of claim or to such creditor's attorney of record in the chapter 11 case. The Debtor shall have no obligation to locate the holder of a claim whose distribution or notice is properly mailed but nevertheless returned.

## PART X

### Claims Bar Date

No claims other than those contemplated to be filed pursuant to this Plan shall be accepted after the claims bar date when finally determined. Any claim filed after such time submitted by any creditor will be considered untimely and shall be disallowed. The Debtor is seeking a claims bar date to be the close of business on September 20, 2010.

## PART XI

### Confirmation Standard

The Bankruptcy Court shall confirm a Plan of Reorganization only if all requirements for confirmation set forth at 11 USC Section 1129 are met. Creditors are urged to review the stated provisions and Disclosures provided for in this Plan.

## PART XII

### Confirmation Hearing for the Plan of Reorganization

Any Objection to this Plan of Reorganization shall be made in writing and filed with the following persons or offices:

1. Clerk, United States Bankruptcy Court, 35 E. Mountain Street, Room 316, Fayetteville, Arkansas 72702;

2. Donald A. Brady, Blair and Brady, 109 N. 34th Street, Rogers, Arkansas 72756; and

3. Office of the United States Trustee, Attn: Rick Sforzini, Trial Attorney, 200 West Capitol Avenue, Suite 1200, Little Rock, Arkansas 72201.

Time and Place of the hearing on the Confirmation of the Debtor's Plan will be sent to you by subsequent notice from the Debtor, the Court, or both.

## PART XIII

### Debtor NOT to be Treated as a Small Business

The Debtor is not to be treated as a Small Business as defined by 11 USC Section 101(51C) and (51D).

## PART XIV

### Modifications of the Plan of Reorganization

The Debtor may modify a Plan of Reorganization subject to the restrictions set forth in 11 USC 1127.

## PART XV

### Means of Effectuating the Plan

1. **Funding for the Plan**

The Debtor is a corporation which has been involved in real estate development. Since the downturn in the economy, there hasn't been much activity in the way of new development. Primarily, the corporation is concentrated upon the renting and leasing its existing inventory of single and multi-family units. The Attached Exhibits show the Debtor's cash flow and budget. Currently, the Debtor has around a 75% occupancy rate in its units. The Debtor's goal is to increase this rate to 88% or above, however, even minor increases will have a significant effect on the Debtor's cash flow and profitability.

2. **Post-confirmation Management**

James H. Lemmon will continue to manage the Debtor Corporation as he has done for the last 20 plus years.

3. **Disbursing Agent**

James H. Lemmon will act as the disbursing agent for the purpose of making all distributions provided for under the Plan. Disbursing Agent shall serve without bond and shall not receive any

compensation for such services. The Debtor considers this as part of the salary of Mr. Lemmon as represented above. Mr. Lemmon will be reimbursed for any document expenses, if any, associated with the disbursement of funds.

## PART XVI

### Vesting of Property and Discharge of Debts

The Debtor is seeking a discharge pursuant to 11 USC Section 114. The Debtor is entitled to a discharge because this is a Plan of Reorganization, not liquidation, and the Debtor intends to engage in business after the consummation of the Plan.

Except to the extent provided for in this Plan or in the confirmation Order, upon the effective date, the Debtor shall not be discharged and released from any and all debts and claims arising or incurred prior to the Effective Date unless and until the Debtor completes all payments to unsecured creditors pursuant to this Plan or as otherwise provided for in 11 USC section 114.

On the Effective Date of the Plan, all property of the estate, including all causes of action for avoidance of transfers, shall vest in the Debtor and shall be beheld and owned by it free and clear of all liens, claims and interests of all creditors except to the extent provided for in this Plan.

## PART XVII

### Request for Confirmation

Debtor requests confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.

It is the Debtor's intent that the confirmation order shall:

(1) be entered by the Court in form and substance consistent with the Plan and shall not have been reversed, stayed, modified or amended in any material respects prior to the Effective Date;

(2) expressly approve the terms and provisions of the Plan pursuant to 11 USC §1129;

(3) provide for the rejection on the Effective Date of all executory contracts and leases not included in the Estate Assets and otherwise specifically assumed prior to the Confirmation Date;

(4) provide that all sales and transfers of the Estate Assets contemplated by, or provided for, in the Plan shall be free and clear of all transfer and stamp taxes in accordance with section 11 USC §1146(c);

(5) provide for the treatment of the Liens and Claims of holders of Allowed Secured Claims and Liens;

(6) authorize and direct the Debtor to perform its obligations under the Plan and to take all actions and execute all documents and instruments reasonably necessary to consummate the transactions

contemplated thereby in accordance with the terms thereof;

(7) provide that, upon the Effective Date, the Debtor shall be vested with the rights and powers granted to a trustee under section 11 USC §1107(a) with respect to the allowance, treatment or avoidance of Liens or Claims to be assumed by the Reoroganizing Debtor;

(8) provide that the Estate Assets shall be and shall remain free and clear of the Liens, Claims, and Equity Interests of any Entity except for those of the respective Creditors and post-confirmation U.S. Trustee fees; and no Entity shall be permitted to execute against or receive Distributions from the Debtor except in accordance with the terms of the Confirmation Order and of the Plan;

(9) provide that the entry of the Confirmation Order shall not have any *res judicata* or other preclusive effect with respect to any claims of the Debtor against third parties that are not specifically and expressly released by the terms of the Plan or Confirmation Order and that the entry of the Confirmation Order shall not be deemed a bar to asserting such claims.

(10) entitle the Debtor to seek such orders, judgments, injunctions and rulings as each deems necessary to carry out and further the intentions and purposes and to give full effect to the provisions of the Plan.

### PART XVIII

### Jurisdiction

The assets and property of the Debtor shall remain subject to the jurisdiction of the Bankruptcy Court until the Effective Date. Subsequent to the Effective Date, the Bankruptcy Court shall retain jurisdiction over matters pending on the Effective Date or as set forth in the Confirmation Order. The Bankruptcy Court shall retain jurisdiction to resolve disputes arising under the Plan for which relief may be granted under the Bankruptcy Code and Bankruptcy Rules.

Until the effective date and until the case is closed, the court shall retain jurisdiction of the proceeding for the purposes set forth in 11 USC Section 1127 (b) to: (a) classify claims of creditors and determine claims and objections thereto as may be filed; (b) the determination of all questions, causes of actions, controversies, disputes, or conflicts between the Debtors, the United States Trustee, any creditors, and any other parties, whether or not subject to a pending motion or action as of the confirmation date; (c) the correction of any defect, the curing of any omission, or the reconciliation of any inconsistencies in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and intent of this Plan, either on Notice or as the Bankruptcy Court shall determine to be appropriate; (d) the modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code; (e) the enforcement and interpretation of the terms and provisions of this Plan; (f) the time period fixed for any act or thing under this Plan, on notice or as the Bankruptcy Court may deem appropriate; (g) the entry of any order or injunction necessary to enforce the right, title, interest and power of the Debtor, and to impose such limitations, restrictions, terms and conditions on such right, title, interest and power as the Bankruptcy court may deem necessary; and (h) the entry of an order closing the Chapter 11 Case.

## PART XIX

### United States Trustee's Fees

The Debtor shall comply with 28 USC section 190(a) (6) which provides for the payment of post confirmation quarterly fees until the case is closed, converted, or dismissed, and the Debtors shall provide post confirmation reporting to the U. S. Trustee's Office until the case is closed, converted, or dismissed pursuant to the regulations of that office.

Respectfully submitted this 17th day of June, 2010.

| | |
|---|---|
| By: /s/ Don Brady | /s/ James H. Lemmon |
| Don Brady 97-047 | James H. Lemmon for Debtor |
| BLAIR & BRADY | |
| 109 N. 34th Street | |
| Rogers, AR 72756 | |
| 479-631-0100 | |
| 479-631-8052 Fax | |